UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ALBERTO IZQUIERDO-MATOS,<br><br>                                    Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, PAMELA JO BONDI, Attorney General, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, JESUS ROCHA, Acting Field Office Director, San Diego Fie1d Office, CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,<br><br>                                    Respondents. | Case No.:  25-cv-2979-BJC-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 8 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Before the Court is Carlos Alberto Izquierdo-Matos's ("Petitioner") Motion for Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). ECF No. 1. Petitioner also filed a Motion for Temporary Restraining ("TRO"). ECF No. 3. Respondents filed a response that simultaneously addressed the Petition and the TRO, ECF No. 9, and Petitioner filed a traverse. ECF No. 10. The Court held a hearing on November 18, 2025. For the reasons set forth below, the Petition, ECF No. 1, is **GRANTED IN PART AND DENIED IN PART.**

CASE NO

# I.     BACKGROUND

The Petitioner is a native and citizen of Cuba who entered the United States in 1980. ECF No. 1 at 2.  He was convicted of robbery in 1992 and transportation for sale of dangerous drugs in 2003.  ECF No. 9-1 at 2.  In May 2008, an immigration judge ordered him removed to Cuba.  *Id.*  In September 2008, Petitioner was released from the custody of Immigration Customs and Enforcement ("ICE") under an order of supervision, as ICE was unable to repatriate him.  *Id.*  On October 7, 2008, Petitioner was re-detained for failing to abide by the conditions of his order of supervision, but he was later released the same day.  *Id.*  Respondent was again detained in March 2012 for failure to abide by the conditions of his order of supervision, and he remained in custody until his release in April 2012.  *Id.*

In June 2025, Petitioner received a notice by mail directing him to report to the ICE office in San Diego, California on July 11, 2025, for a routine check-in.  ECF No. 1 at 4-5.  Petitioner appeared as instructed.  *Id.* at 5.  Upon his arrival, ICE officers arrested him, and he has remained detained since that date at the Otay Mesa Detention Center.  *Id.*

Since his re-detention, ICE claims that it has been working diligently to effectuate his removal.  ECF No. 9-1 at 2.  After repatriation efforts to Cuba proved unsuccessful, ICE identified Mexico as a third country to which Petitioner could be removed.  *Id.*  ICE further asserts that, after receiving Mexico's agreement to accept him, it notified Petitioner that he would be removed there.  *Id.*  Petitioner, however, denies receiving such notice. *See generally* ECF No. 1 at 5.  Instead, he alleges that several weeks ago, ICE officers instructed him to change out of his detention uniform, gather his belongings, and board a van with other detainees, which was then driven to the border with Mexico.  *Id.*  When Petitioner stated that he did not wish to enter Mexico, he was returned to the van and subsequently transported back to ICE custody.  *Id.*  ICE now claims that it is actively seeking another third country willing to accept Petitioner and that, "barring further noncompliance with removal efforts by Petitioner, there is a high likelihood of Petitioner's removal to a third country in the near future."  ECF No. 9-1 at 3.

2

CASE NO

On November 3, 2025, Petitioner filed a Petition for Writ of Habeas Corpus. ECF No. 1. He also filed a Motion for Temporary Restraining Order. ECF No. 3. On November 10, 2025, Respondents provided Petitioner a written Notice of Revocation of Release and conducted an informal interview of him. ECF No. 9-2 at 15. On November 12, 2025, Respondents then filed a response opposing Petitioner's TRO and Petition. ECF No. 9. Petitioner filed a traverse on November 14, 2025. ECF No. 10. The Court held a hearing on November 18, 2025.

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III.  DISUCSSION

### A.  Jurisdiction

Under 8 U.S.C. § 1252(g), except as otherwise stated, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Ninth Circuit has made clear, however, that § 1252(g) must be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631,

CASE NO

at *6, *14–15 (9th Cir. Aug. 27, 2025) (emphasis in original). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *18. Specifically, § 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1032 (9th Cir. 1998). "[The plaintiffs'] objective was not to obtain judicial review of the merits of their . . . proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id.* at 1052.

Respondents argue that because Petitioner's detention stems from the government's initiation and execution of removal proceedings, § 1252(g) strips this Court of jurisdiction. ECF No. 9 at 2. Petitioner counters that he does not challenge the government's authority to execute his removal order; rather, he challenges (1) the legality of his continued detention pending removal and (2) the government's attempt to remove him to a third country without notice and an opportunity to be heard. ECF No. 10 at 6.

The Court concludes that it has jurisdiction. Petitioner is not challenging Respondents' decision to execute a removal order, which would bar this Court's review. Instead, he challenges the legality of his detention based on alleged violations of statutory, regulatory, and constitutional duties. *Id.* Such claims fall squarely within the Court's habeas authority. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders."); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (interpreting 1252(g) to allow jurisdiction over detention challenges).

B.    **Procedural Safeguards Governing Revocation of Order of Supervision**

The Government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations also govern the revocation of such noncitizens' release. Both 8 C.F.R. § 241.4(l)(1) and § 241.13(i)(3) provide that, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her

4

return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Here, Petitioner contends that ICE failed to follow its own regulations by not providing him with adequate notice or a timely interview, and his removal is not reasonably foreseeable. ECF No. 1 at 16. The Court agrees.

### i.    *Notice*

Subsection 241.13(i)(3) provides that a noncitizen "will be notified of the reasons for revocation of his or her release." In this case, Petitioner was arrested on July 11, 2025, ECF No. 9-2 at 10, but he did not receive formal notice of the reasons for revocation until November 10, 2025. ECF No. 9-2 at 15.

The Court finds that this four-month delay is insufficient. The plain language and structure of the regulation demonstrate that notice must be both written and contemporaneous with, if not prior to, the act of revocation. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("[W]here the statutory language provides a clear answer, it ends there as well."). Section 241.13(i)(3) expressly provides that the noncitizen must be given "an opportunity to respond to the reasons for revocation stated in the notification." This provision presumes written notice identifying the specific grounds for revocation. *See Tran v. Noem*, No. 3:25-cv-02391-BTM-BLM, 2025 WL 3005347 (S.D. Cal. Oct. 27, 2025) ("The Court holds that the notice must be in writing and contain all the reasons for the revocation of the alien's release."). Otherwise, the opportunity to respond would be meaningless. Oral or belated notice fails to satisfy the regulation's procedural safeguards and deprives the noncitizen of a meaningful chance to contest the decision to revoke supervised release.

### ii.    *Interview*

Second, the regulation requires that an informal interview be conducted "promptly after [the noncitizen's] return to Service custody." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). This requirement ensures that noncitizens have an immediate opportunity to respond to the stated reasons for revocation and to present evidence that removal is not significantly likely in the reasonably foreseeable future. As noted above, Petitioner was re-detained on July

CASE NO

11, 2025, yet ICE did not conduct the informal interview until November 10, 2025. ECF No. 9-2 at 18. Such a delay cannot reasonably be construed as "prompt" within the meaning of the regulation. *See Constantinovici v. Bondi*, No. 3:25- CV-02405-RBM-AHG, 2025 WL 2898985 (S.D. Cal. Oct. 10, 2025) (holding that a six-week delay in conducting an interview following arrest was not "prompt" under the regulation).

### iii.   *Likelihood of Removability*

Subsection 241.13(i)(2) requires ICE to determine that the detainee is likely to be removed in the reasonably foreseeable future "on account of changed circumstances." In this case, Petitioner was re-detained on July 11, 2025. ECF No. 9-1 at 2. ICE has unsuccessfully attempted to remove Petitioner to Cuba, his country of origin, and it was not until October 1, 2025, that ICE attempted removal to a third country, Mexico, which also failed. *Id.* There is no evidence that Cuba will accept Petitioner, and travel documents have yet to be obtained. Indeed, no travel documents to Cuba have been issued in the 17 years since Petitioner was ordered deported in May 2008. *See generally id.* Accordingly, there is no reasonable basis to conclude that Petitioner's removal is imminent or reasonably foreseeable.

### C.   **Lawfulness of Petitioner's Continued Detention Under 8 U.S.C. § 1231**

Section 1231 governs the arrest and detention of noncitizens subject to a final removal order. *See* 8 U.S.C. § 1231. It directs the Attorney General to effectuate removal "within a period of 90 days," known as the "removal period," during which detention is authorized. § 1231(a)(1)–(2). In *Zadvydas*, the Supreme Court clarified that detention beyond the removal period is presumptively lawful for up to six months; after that, a noncitizen may make a prima facie case for relief by sharing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to "the Government [to] respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

Petitioner asserts that he was ordered removed in May 2008, and the six-month *Zadvydas* period expired in November 2008. ECF No 1 at 11-12. Petitioner also argues that

6

there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* ICE's failed effort to remove him to Mexico, and its lack of effort to remove him to Cuba, do not satisfy the statutory standard. *Id.* Petitioner asserts that the burden therefore shifted to the Government to prove that there is a likelihood of removal in the reasonably foreseeable future, and the Government has failed to meet its.

Respondents argues that removal efforts are ongoing, and detention remains lawful under *Zadvydas*. ECF No. 9 at 7. Respondent assert that they attempted to repatriate Petitioner to Cuba in 2008 but were unsuccessful, *id.* at 9-1, and further claim that they again sought to effectuate his removal to Cuba in 2025. *Id.* According to Respondents "the government of Cuba did not accept Petitioner for removal." *Id.* at 2. However, Respondents have provided no documentation whatsoever to substantiate any recent efforts to remove Petitioner to Cuba. *See generally id.* Despite this lack of evidentiary support, Respondents maintain that that Petitioner's detention is not reasonably related to effectuating removal because ICE is actively pursuing removal. ECF No. 9 at 3.

The Court finds that Petitioner has satisfied his burden under *Zadvydas*. Petitioner was ordered removed in May 2008, ECF No. 1 at 4, and the six-month presumptive detention period expired long ago. Petitioner has presented evidence that removal to Cuba is uncertain. No travel documents have been obtained at this time. *See* ECF No. 9-1. While Respondent contends that detention remains lawful because it is reasonably related to effectuating removal, the Court finds that mere good-faith efforts is insufficient under *Zadvydas*. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1081–82 (9th Cir. 2006) (holding that the government lacked authority to detain an individual indefinitely under § 1231 where removal was not reasonably foreseeable despite ongoing diplomatic efforts). Continued detention must be justified by a significant likelihood of removal within a reasonably foreseeable period, and Respondents have failed to meet that standard.

## D.    Conclusion

For the reasons set forth above, the Court concludes that Petitioner's continued detention is unlawful. Respondents failed to comply with the procedural safeguards set

7

CASE NO

forth in 8 C.F.R. §§ 241.4 and 241.13, including the requirements for timely, written notice and a prompt interview following revocation of release. These failures constitute violations of both binding agency regulations and the fundamental due process rights guaranteed by the Fifth Amendment.

Moreover, Respondents have not demonstrated that Petitioner's removal is significantly likely in the reasonably foreseeable future, as required under *Zadvydas*, 533 U.S. at 701. Petitioner has therefore met her burden of showing that her continued detention is no longer authorized by statute and is constitutionally impermissible.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

CASE NO

## IV.    ORDERS

Upon consideration of the petition for writ of habeas corpus, ECF No. 1, and for good cause shown, it is hereby **ORDERED** that:

1. Respondents are hereby **ORDERED** to immediately release the petitioner from the Otay Mesa Detention Center.

2. Respondents are **ENJOINED** from re-detaining Petitioner unless there has been a change in circumstances that creates a reasonable likelihood of his removal in the reasonably foreseeable future.

3. Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. 1231 until they have obtained valid travel documents necessary for Petitioner's removal.

4. Respondents are further **ENJOINED** from re-detaining Petitioner unless and until they follow the procedural safeguards set forth in 8 C.F.R. §§ 241.4; 241.13.

5. Respondents are also **ENJOINED** from removing Petitioner to any country other than Cuba, without first following the procedures of 8 U.S.C. § 1231(b)(2).

6. Petitioner's request for additional injunctive relief set forth in paragraph 5 of the Prayer for Relief, ECF No. 1 at 23, is **DENIED**.

7. Petitioner's Motion for TRO, ECF No. 3, is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Dated:  November 18, 2025

_Bryan Cheeks_

Honorable Benjamin J. Cheeks
United States District Judge

CASE NO